## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **LAURA YOUNG,**<br>631 Alabama Avenue<br>North Beach, MD 20714<br><br>       Plaintiff,<br><br>v.<br><br>**PRINCE GEORGE'S COUNTY,**<br>**MARYLAND,**<br>1301 McCormick Drive<br>Suite 4100<br>Largo, MD 20774<br>       <u>Serve</u>:<br>       Rhonda L. Weaver<br>       County Attorney<br>       1301 McCormick Drive<br>       Suite 4100<br>       Largo, MD 20774<br><br>and<br><br>**TANYA JACKSON,**<br>Individually and in her official capacity as<br>an employee of Prince George's County<br>9201 Basil Court<br>Suite 250<br>Largo, MD 20774<br><br>       Defendants. | Civil Action No. _____<br><br><br>**JURY TRIAL DEMANDED** |

## <u>COMPLAINT AND JURY DEMAND</u>

COMES NOW, Plaintiff Laura Young, by and through undersigned counsel, and sues Defendants Prince George's County, Maryland (the "County") and Tanya Jackson, individually and in her official capacity, (collectively "Defendants"), for cause, claims, damages, and demands judgment, and complains as follows:

1

## INTRODUCTION

Ms. Young was a loyal and dedicated employee of Prince George's County for over thirty-five years when her co-worker violently assaulted her during the workday, in the workplace, while Ms. Young was on the clock, in an unprovoked attack. On December 19, 2019, Ms. Young's co-worker, Tanya Jackson, violently assaulted her in a racially-motivated attack.

The County then unlawfully suspended Ms. Young, the victim, without pay for ten days, with threats of future discipline. Ms. Young appealed this decision, seeking medical coverage for her injuries and a peace order against her co-worker. Instead of taking steps to protect Ms. Young, the County revoked her telework privileges, denied her worker's compensation claims, denied her disability leave, and refused to arrange for a permanent and safe job placement.  The County improperly refused to give Ms. Young a safe job placement away from her attacker unless she was willing to release and settle claims against the County, which she refused to do.

The County ultimately insisted on a seven-day suspension that remains on Ms. Young's permanent record. She continues to challenge the suspension in administrative appeals which remain pending.

The County completely failed to hold Ms. Jackson accountable for her violent actions, while also unlawfully punishing Ms. Young, the victim of a racially-fueled attack.  The County's response to this attack was motivated by racial discrimination against plaintiff, and in favor of Ms. Jackson, and in retaliation against Ms. Young for her insistence on initiating legal and administrative action as a result of the attack by Jackson and the County's actions in response to the attack.

## PARTIES

1.     Plaintiff Laura Young is an adult White female residing in Calvert County, Maryland. At all relevant times, Ms. Young was an employee of Defendant Prince George's County and Prince George's County Office of Information Technology.

2.     Defendant Prince George's County, Maryland is a municipal corporation organized under the provisions of Art. XI-A of the Constitution of Maryland. The County organizes, operates, and maintains the Prince George's County Office of Information Technology ("OIT") which is an agency of the County government.

3.     Defendant Prince George's Office of Information Technology provides technical support for all of the agencies, departments and branches in the county government. OIT provides resources to develop and deploy innovative technologies and streamlined processes to improve government efficiency, business interaction and citizen access to government information and services. OIT maintains a principal place of business in Prince George's County, Maryland.

4.     Defendant Tanya Jackson is an adult Black female. Plaintiff is informed and believes and herein alleges that Defendant Jackson resides in Prince George's County, Maryland. At all relevant times, she was an employee of Prince George's County and OIT, and performing functions for the County. Plaintiff sues Defendant Jackson in her official and individual capacity.

## JURISDICTION AND VENUE

5.     The Court has personal jurisdiction over Plaintiff, as she is a resident of the state of Maryland, and over all Defendants because the events giving rise to Plaintiff's claims against them arose within the state of Maryland and pursuant to Rule 4(k).

6.     This Court has jurisdiction over the subject matter and all parties pursuant 28 U.S.C. § 1331, which confers upon United States District Courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States, and because Plaintiff's claims arise under, *inter alia*, 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(b), and the Fourteenth Amendment.

7.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1346(b)(1), because this is a civil action against Prince George's County, Maryland for personal injury caused by the negligent or wrongful act or omissions of an employee of the Government of Prince George's County, Maryland, while acting within the scope of her employment, under circumstances where the County, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

8.     This Court has supplemental jurisdiction over Counts V through X of this Complaint, which arise under the laws of Maryland, pursuant to 28 U.S.C. § 1367(a), because the claims arise from a common set of operative facts with Counts I through IV. Thus, the claims are so related to the claims in the action within the original jurisdiction of this Court that they form part of the same case or controversy.

9.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2), because the events or omissions giving rise to Plaintiff's claims occurred in the State of Maryland and occurred in the District of Maryland, in Prince George's County, Maryland.

10.     The amount in controversy as set forth in the complaint exceeds $75,000 in an amount to be determined by the jury.

**NOTICE**

11.     To the extent that certain of Plaintiff's claims are governed by provisions of the Local Government Tort Claims Act, Plaintiff provided notice of her claims to Defendants on January 31, 2020 as required by Md. Code § 5-304.

12.     Defendants confirmed receipt of Plaintiff's January 31, 2020 notice in a letter dated February 5, 2020. Since such time, Defendants have been in communication with Plaintiff's counsel and on notice of her subsequent and continuing injuries and claims set forth herein.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

13.     Plaintiff exhausted her administrative remedies and commences this action more than 180 days after filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and within 90 days of receiving a Right to Sue Notice.

14.     On May 29, 2020, Plaintiff filed verified charges of discrimination and retaliation based on race and color with the Maryland Commission on Civil Rights and the Prince George's County Human Relations Commission, EEOC Charge No. 531-2020-02320, HRC Case No. HRC20-0707.

15.     On March 16, 2022, the Prince George's County Office of Human Rights issued a Right-to-Sue with respect to Plaintiff's EEOC Charges.

16.     As of that day of this Complaint, Plaintiff's matter before the Prince George's County Personnel Board is still pending and additional proceedings be heard later in the year.

17.     The statutory prerequisites for bringing this action have been timely satisfied.

**FACTS COMMON TO ALL COUNTS**

18.     Ms. Laura Young had an impeccable record of service for Prince George's County for over thirty-five years in a variety of roles and departments, including service as

administrative aide to the chief judge of the Seventh Judicial Circuit. Ms. Young is a White female. In 2019, Ms. Young worked for the Prince George's County Office of Information Technology in the Asset Management Division.

**Workplace Assault**

19.     On December 19, 2019, OIT hosted an office holiday party for its employees, and scheduled the party from 2:00 to 4:00 p.m. in a room at the office. Employees remained clocked-in during the party, and Ms. Young planned to attend with her co-workers. She paid her contribution towards the materials for the party in advance, and purchased a gift for the "White Elephant" gift exchange.

20.     Ms. Young scheduled an optometrist appointment for that morning, but knew that she would still make it to the party, as it was not set to begin until 2:00 p.m. She notified her supervisor, Joyce Price, of her appointment in advance and properly requested leave. Ms. Young even made a publicly available calendar entry indicating that she would be absent. One of the coordinators of the event, a co-worker named Ericka Freeman, knew that Ms. Young planned to arrive late for the party due to this appointment, but that she still planned to participate.

21.     At 12:30 p.m., Ms. Young texted Ms. Price to inform her that her optometrist appointment was rescheduled to a later time that day, but that she would still be able to arrive in approximately an hour, which was before the party was set to begin. Ms. Price responded "okay, plenty here," indicating to Ms. Young that there was plenty of food to go around if Ms. Young was late.

22.     Ms. Young called Ms. Price around 2:00 p.m. to inform her that she was thirty minutes away. At 2:45 p.m., Ms. Young clocked-in to work at her personal work station, and then proceeded into the common area of the office to attend the party. When she arrived, the

6

festivities appeared to be winding-down, despite being scheduled from 2:00 to 4:00 p.m. Ms. Young was disappointed that her co-workers did not wait for her, as she had diligently informed them that she would be late. Her co-workers knew that she wanted to participate in the party, but they ate and completed the "White Elephant" gift exchange without her.

24.     Ms. Young sat down near her managers and co-workers when Ms. Price invited Ms. Young to help herself to the remaining food. Ms. Young declined the offer, but said she would get a drink. Ms. Young walked to the drink table across the room to get a beverage, when defendant Tanya Jackson walked over and bumped into her deliberately and without provocation. Ms. Young did not react to the contact and went to get some ice from a nearby table when Ms. Jackson followed her and deliberately bumped into her once more, again deliberately and without provocation. Ms. Young again did not react.

24.     Once Ms. Young had her drink, she returned to the area where she had been seated prior, and inquired whether the luncheon started earlier than 2:00 p.m., as scheduled. Ruthven Roper told her that the party began as early as 12:30 or 1:00 p.m. that day. Ms. Young was extremely surprised and confused as to why the event started so early, and disappointed that they left her out.

25.     Ms. Young turned to Ms. Freeman and asked her to confirm that the party started early, but Ms. Freeman insisted that the event was scheduled for 1:00 p.m.

26.     Ms. Young was frustrated, as she knew the true scheduled start time, and planned her day to attend. She felt as though her co-workers started the festivities earlier, knowing that she made arrangements to come late. Ms. Young said, "You all, I'm not stupid. I know what the e-mail said." She excused herself and began walking back to her office.

27.     At that time, Ms. Jackson offered Ms. Young her money back for the lunch, which Ms. Young accepted. As Ms. Young walked away, she heard Ms. Price tell the group, "She didn't say that when Shelby was here." Shelby Henderson was their supervisor, and Ms. Young took this to mean that they thought she was being disingenuous.

28.     Ms. Young turned around and told the group she would have no problem saying the same to Shelby Henderson if she was present, and that the email clearly indicated a 2:00 p.m. start time.

29.     Ms. Jackson interjected and said, "Wait a minute, we are all here having a wonderful time eating, talking and laughing and you are behaving like an asshole!"

30.     Ms. Young replied, "Well right now, you are acting ghetto." Ms. Young heard this group of coworkers use the term "ghetto" before to describe various individuals. She used the term based on Ms. Jacksons' intonation, verbiage, body language, and raised voice, not because of her race.

31.     Ms. Jackson then jumped out of her chair and started screaming, yelling "I am so tired of your white privileged ass!" Ms. Jackson then ran towards Ms. Young and cornered her against a chair and wall screaming, "Who are you calling ghetto? Go ahead, touch me, hit me. You picked the wrong girl! You picked the wrong girl!"

32.     Ms. Young was shocked by the threats by Ms. Jackson and asked her to stop and leave her alone. She attempted to move away from Ms. Jackson.

33.     Ms. Jackson then grabbed Ms. Young and pushed her over two chairs and a table, with Ms. Young landing on a metal filing cabinet. Ms. Jackson's co-workers had to intervene and restrain Ms. Jackson to stop her violent and unprovoked attack against Ms. Young. In the brief period of respite, Ms. Young retreated to the opposite side of the room.

34.     When her coworkers released Ms. Jackson she then attacked Ms. Young again, placing her hands around Ms. Young's throat and violently choking her. Ms. Price physically placed her body between Ms. Jackson and Ms. Young to stop the choking and prevent Ms. Jackson from inflicting further harm. County employee Sandra Long and a security guard entered the room, and Ms. Long physically removed Ms. Jackson from the room.

35.     Ms. Young was injured, scared, and shaken by the attack. However, no one in the office offered her assistance, medical attention, or inquired into her well-being. She walked back to her workstation alone, and in shock.

### County's Response to the Assault

36.     Ms. Young then went to the office of Associate Director, Glenn Mains, in order to make a report of what occurred. When she could not find Mr. Mains, Ms. Young knocked on Ms. Henderson's door instead, and was surprised to find Ms. Price already inside. Ms. Henderson told Ms. Young to stay in her office while she and Ms. Price spoke with Heidi Coffey in the Human Resources office. Neither Ms. Henderson nor Ms. Price asked if Ms. Young was ok, offered her medical care, or called the police to make a report of the assault.

37.     While waiting in the office, Ms. Young called Associate Director Mains to report what happened. She also called her husband, who rushed to the office when he heard about the assault. When Ms. Henderson and Ms. Coffey returned, they interviewed Ms. Young and took her statement of the events.

38.     Over an hour after the assault, Ms. Coffey finally inquired if Ms. Young needed medical attention. Ms. Young replied that she was not sure if she needed medical attention because she was still in shock, but that she may seek it later that evening.

39.     Ms. Young's husband arrived at the office, and immediately inquired as to why no one called the police. Ms. Coffey claimed that it was the department's policy to not call the police, and to just send both employees home for three days for a cooling-off period while they investigated the incident. Ms. Coffey never explained that this three-day investigation period would be without pay. She asked for Ms. Young's keycard but told her, "Don't think you are being fired."

40.     Ms. Young and her husband left the office at approximately 4:20 p.m. and traveled directly to Upper Marlboro to file assault charges against Ms. Jackson with the District Court Commissioner, after her supervisors refused to contact law enforcement at the office.

41.     After filing her report, Ms. Young sought medical attention from a nearby urgent care facility. But, when the facility learned that her injuries occurred at the workplace, they refused to treat her without pre-approval from her employer's workers compensation insurance. Ms. Young called Ms. Henderson to inquire about coverage, but Ms. Coffey claimed that they would not be able to get approvals until the following business day. Ms. Young urgently needed medical care and was willing to pay out of pocket, but the facility would not treat her without these approvals.

42.     As a result, Ms. Young returned home, in pain and without medical treatment. The following day, she went to the emergency room at Calvert Memorial Hospital, where she received treatment for left shoulder pain and bruising, right femur bruising and contusions, right forearm bruising and contusions, and lower and upper back pain and neck pain.

43.     The ER physician determined that Ms. Young could not return to work with her injuries. He referred her to begin physical therapy to treat – as he thought at the time – a sprained neck and back. However, upon beginning physical therapy, the supervising orthopedic ordered

an MRI which revealed that Ms. Young had in fact suffered a torn rotator cuff as a result of the assault, which may ultimately require surgery. Ms. Young continues to require physical therapy for her injuries from the assault by Ms. Jackson.

### Peace Order Proceedings

44.     On January 21, 2020, the District Court of Maryland for Prince George's County granted Ms. Young a peace order against Ms. Jackson.  The court issued the order following an evidentiary hearing in which both Ms. Jackson and Ms. Young testified under oath.  The court found "reasonable grounds to believe that the respondent [Jackson] has committed, and is likely to commit in the future, an act specified in § 3-1503(a)," specifically in this case: assault in any degree.[1] Md. Code §3-1504(a)(1). After hearing the testimony of both Ms. Young and Ms. Jackson, Judge Patrice Lewis of the District Court found that Ms. Jackson assaulted Ms. Young and presented a continued threat to her physical safety.

45.     In her findings of fact, the court noted the following:

> I understand that the Respondent [Ms. Jackson] is saying that she took personal offense at the use of the phrase "ghetto." I am looking at two women of an age where words are not sufficient to result in that kind of a physical attack at work. That is completely outrageous. There is no circumstances at work where somebody is putting their hands on somebody's throat. I do not find that what Respondent was merely defensive and the fact that you testified multiple people had to hold you back and it was resolved, and yet it started up again, I find that your response was excessive.

January 21, 2020 Transcript at 1-11.

46.     Judge Lewis emphasized that words could not justify Ms. Jackson's acts of violence in the workplace against Ms. Young. The Court entered a "no contact" peace order.

### Retaliatory Discipline

---

[1] Assault in any degree is specified under Md. Code § 1503(a)(1)(iii).

11

47.     On December 20, 2019, a day after the assault, the County informed Ms. Young that she was suspended for three days for an alleged "breach of peace during hours of work through [her] participation in a verbal altercation that escalated to a violent exchange between [her] and another employee." The notice did not inform Ms. Young that the suspension was without pay.

48.     The County later claimed that its initial suspension of Ms. Young was for a breach of the peace in accordance with Personnel Law, Section 16-193(c)(4)(D). Ms. Young had committed no breach of peace.

49.     On January 13, 2020, the County sent a letter to Ms. Young with its determination that it would suspend her for a total of ten days without pay for an "altercation [that] threatened the safety of other employees and has negatively impacted the efficient and/or safe operations of the Asset Management Division." OIT also revoked Ms. Young's telework privileges.  The County's notice falsely stated that she was responsible for an altercation that threatened the safety of employees.  Ms. Young was the victim of violent assaults by Defendant Jackson and had not herself engaged in any altercation or attack.

50.     The County later claimed that it changed its position after investigating the incident. It explained that a seven-day suspension was appropriate under Personnel Law, Section 16-193(c)(4)(B), and that Ms. Young's actions fit under Sections 16-193(c)(1)(B), (C), and (E). As a result, the ten-day suspension would include the initial three days she was sent home after the incident.

51.     Despite being the victim of the assaults, Ms. Young received the same suspension as Ms. Jackson, her attacker. None of the sections of the Personnel Code cited by the County

apply to Ms. Young. Therefore, the County had no basis to suspend Ms. Young for any amount of time.

52.     On February 12, 2020, Ms. Gibson advised that she was reducing the suspension to a total of seven working days. Ms. Price and Ms. Gibson, two African-American women, ultimately made the disciplinary determination in this matter. They gave the same punishment to a white woman for an alleged improper comment, as an African-American woman for violently assaulting a co-worker in the workplace. They chose to cast Ms. Jackson's events as justified, and Ms. Young as a violent, aggressive, instigating co-worker. The County disciplined Ms. Young because she is a White female.

53.     On January 31, 2020, Ms. Young requested that the County arrange for a transfer of Ms. Jackson to another department for Ms. Young's safety, and to comply with the stay away provisions of the peace order. Ms. Young was not medically cleared to return to work until March 6, 2020. Incredibly, the County moved Ms. Young, the victim, to the County landfill to work, and allowed the attacker, Ms. Jackson, to remain in the workplace, despite a peace order which required Ms. Jackson to stay away from Ms. Young.

54.     Ms. Young's was moved from her office at OIT to the County landfill, an operation managed by the County. The County allowed the attacker to remain the workplace while the victim was transferred out of her workplace.  The attacker was allowed to continue to work in the office, and Ms. Young was forced to work at the landfill.

55.     The County's actions, including removing Ms. Young from the workplace, allowing Ms. Jackson to remain in the workplace, and disciplining the victim, Ms. Young, were motivated by discrimination against Ms. Young who is White, and in favor of the attacker, Ms. Jackson, who is Black.  Additionally, Ms. Young's supervisors who made these decisions were

Black, and Ms. Jackson's friends in the office were also Black. The County's actions were also motivated by retaliation against Ms. Young for exercising her lawful rights under federal, state and county law, including, but not limited to: a.) her filing a notice of discrimination and tort claims on January 31, 2020; b.) her filing of a peace order and criminal charges against Ms. Jackson on January 17, 2020; c.) her filing of an EEOC claim on May 22, 2020, and d.) her filing of a notice of appeal of the discriminatory discipline issued against her.

56.     The County then conditioned Ms. Young's permanent transfer at DoE on Ms. Young's consent to global settlement proposed by the County. The County declined to provide a safe permanent workplace until she executed a release her civil and administrative claims against the County and Ms. Jackson.  The County's conditions were presumptively improper. The County cannot condition the provision of a safe workplace by requiring a victim to sign a release of the County and her attacker before agreeing to provide its employee, a victim, with a safe workplace.   The County's failure to provide Ms. Young with a safe workplace away from Ms. Jackson aggravated her injuries, and was motivated by racial discrimination.

57.     The County continued to improperly pressure Ms. Young to sign a release and settle, suggesting that if a permanent transfer was not arranged before the end of the fiscal year, one may not be possible due to budget cuts from COVID-19.  These actions were in response to the peace order complaint of Ms. Young, and continued after she filed her EEOC complaint on May 22, 2020, and in retaliation for that filing as well. The County's actions also retaliated against Ms. Young for reporting and taking action against Ms. Jackson for her racially motivated physical attack on her.

58.     On October 31, 2020, Ms. Young retired from the County, unwilling to enter into an unfair settlement of her claims in order to obtain a safe workplace, and in continued fear that she would be forced to work in the same workplace as Ms. Jackson.

59.     The County eventually denied Ms. Young's workers' compensation claim for injuries she sustained as a result of the assault by Ms. Jackson, even though it was an injury in the workplace that was clearly compensable under Maryland's Workers Compensation Law. There was no lawful basis for the County to decline Ms. Young's claim. The declination was motivated by racial discrimination and in retaliation for Ms. Young's complaints against the County and Ms. Jackson.

60.     In addition to her medical bills, the County forced Ms. Young to expend her leave for the two and a half months that she was not medically cleared to work. When she exhausted her leave, she had to rely on her friends to donate leave hours to her to cover the time.

61.     The County's discriminatory conduct is continuing in nature. In administrative proceedings before the County Personnel Board, the County still seeks to impose a seven-day suspension upon Ms. Young even though she was the victim of the altercation. Those proceedings are still pending.

62.     As a direct and proximate result of this incident, Ms. Jackson suffered from physical, mental and emotional injuries. She attended physical therapy multiple times a week, and started treating with a counselor for the trauma, stress, and anxiety resulting from the event. She remains in pain daily, and requires surgery on her rotator cuff. Her emotional injuries include severe anxiety, stress, fear, humiliation, mental pain and suffering and other emotional damages. She was forced to leave her workplace and work at the landfill, while her attacker was allowed to remain in the workplace. Her suspension and removal from the workplace has

15

damaged her reputation. She was forced to retire early, suffering lost income, lost workers' compensation benefits, and retirement and other benefits.

## COUNT I
## Racial Discrimination
**In Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(b)**
**(Plaintiff v. Defendant Prince George's County)**

63.     Plaintiff adopts and incorporates each and every allegation contained in each of the foregoing paragraphs as if fully restated herein.

64.     By the acts described above, Defendant Prince George's County subjected Plaintiff to disparate terms and conditions of her employment on the basis of her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(b).

65.     At all relevant times herein, Defendant Prince George's County was Plaintiff's employer.

66.     As an employee of Defendant Prince George's County, Plaintiff was entitled to the protections of Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. §§ 2000(e), *et seq*., which prohibits discrimination in the workplace based on a person's race.

67.     Defendant Jackson was at all relevant times Plaintiff's co-worker at Prince George's County. In perpetrating the above-described assault, Defendant Prince George's County subjected Plaintiff to severe and/or pervasive racial harassment as alleged above such that it altered the terms and/or conditions of her employment.

68.     Defendant Prince George's County discriminated against Plaintiff based on her race in violation of Title VII in numerous ways, including but not limited to:

> a. Failing to adequately respond after Plaintiff suffered a racially-motivated attack from a co-worker while in the workplace, such as Defendant's failure to

provide medical assistance or call the police to the scene after the violent assault;

b. Failing to prevent, correct, and eliminate the discriminatory assault against Plaintiff and failing to adequately discipline her attacker, Defendant Jackson;

c. Failing to and refusing to provide Plaintiff with reasonable accommodations to protect her and provide her with a safe workplace environment;

d. Conditioning a safe workplace environment upon the execution of a release from civil liability, and implying to Plaintiff that she would suffer loss of employment if she did not execute the release;

e. Unlawfully suspending Plaintiff, the victim, and otherwise taking wrongful adverse employment action against her after the attack;

f. Imposing the same suspension punishment upon Plaintiff, the victim, as that given to Defendant Jackson, her attacker;

g. Wrongfully denying Plaintiff's workers compensation claim, disability leave, and the full extent of medical leave she required;

h. Taking retaliatory action against Plaintiff without legitimate, non-discriminatory explanation, ultimately forcing Plaintiff to retire;

i. Creating and/or perpetuating a racially hostile workplace environment;

j. Harassing Plaintiff and pressuring her to agree to terms of a global settlement against her interests; and

k. Otherwise failing to comply with their responsibility mandated by Title VII.

69.   Defendant Prince George's County and its agents' conduct, including but not limited to the conduct of Defendant Jackson, directly and proximately caused the injuries, harm,

and damages to Plaintiff.   Defendant Prince George's County's actions discriminated against the Plaintiff based on her race and was in retaliation for her insistence on initiating claims and legal proceedings against the County based on its conduct and the conduct of its employee, Defendant Jackson.

70.     As a direct and proximate result of Defendant and its agents' conduct, Plaintiff has been caused to suffer and did suffer from injuries, including but not limited to physical injuries, economic losses, emotional and mental distress including but not limited to anguish, anxiety, embarrassment, and humiliation.

WHEREFORE, Plaintiff demands damages, injunctive, and other relief as requested below.

**COUNT II**
**Racial Discrimination**
**In Violation of 42 U.S.C. § 1981**
**(Plaintiff v. All Defendants)**

71.     Plaintiff adopts and incorporates each and every allegation contained in each of the foregoing paragraphs as if fully restated herein.

72.     42 U.S.C. § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981(a).

73.     To 'make and enforce contracts' includes "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

74.      At all times relevant hereto, Defendant Jackson was a state actor employed by Prince Georgie's County and acted under color of law.

75. By the acts and omissions described above, Defendants interfered with Plaintiff's enjoyment of the benefits, privileges, terms, and conditions of her employment because of her race.

76. Defendants engaged in intentional discrimination against Plaintiff on the basis of her race, in violation of 42 U.S.C. § 1981, in numerous instances including, but not limited to:

   a. Defendant Jackson's racially motivated attack and assault of Plaintiff in the workplace;

   b. Failing to adequately respond after Plaintiff suffered a racially-motivated attack from a co-worker while in the workplace, such as Defendant's failure to provide medical assistance or call the police to the scene after the violent assault;

   c. Failing to prevent, correct, and eliminate the discriminatory assault against Plaintiff and failing to adequately discipline her attacker, Defendant Jackson;

   d. Failing to and refusing to provide Plaintiff with reasonable accommodations to protect her and provide her with a safe workplace environment;

   e. Conditioning a safe workplace environment upon the execution of a release from civil liability, and implying to Plaintiff that she would suffer loss of employment if she did not execute the release;

   f. Unlawfully suspending Plaintiff, the victim, and otherwise taking wrongful adverse employment action against her after the attack;

   g. Imposing the same suspension punishment upon Plaintiff, the victim, as that given to Defendant Jackson, her attacker;

h. Wrongfully denying Plaintiff's workers compensation claim, disability leave, and the full extent of medical leave she required;

i. Taking retaliatory action against Plaintiff without legitimate, non-discriminatory explanation, ultimately forcing Plaintiff to retire;

j. Creating and/or perpetuating a racially hostile workplace environment;

k. Harassing Plaintiff and pressuring her to agree to terms of a global settlement against her interests; and

l. Otherwise failing to comply with their responsibility mandated by 42 U.S.C. § 1981.

77.     Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from racial discrimination and retaliation.

78.     As a direct and proximate result of Defendant and its agents' conduct, Plaintiff has been caused to suffer and did suffer from injuries, including but not limited to physical injuries, economic losses, emotional and mental distress including but not limited to anguish, anxiety, embarrassment, and humiliation.

WHEREFORE, Plaintiff demands damages, injunctive, and other relief as requested below.

**COUNT III**
**Racial Discrimination**
**In Violation of the Fourteenth Amendment and 42 U.S.C. § 1983**
**(Plaintiff v. All Defendants)**

79.     Plaintiff adopts and incorporates each and every allegation contained in each of the foregoing paragraphs as if fully restated herein.

80.     The Fourteenth Amendment to the United States Constitution guarantees citizens equal protection of the laws of the United States, with violations thereof giving rise to claims for relief under 42 U.S.C. § 1983.

81.     42 U.S.C. § 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the United States Constitution and laws" by persons acting under the color of law. The right to be free from racial discrimination in employment and retaliation for assertion of one's civil rights were both clear and well-established rights, known to each of the Defendants in this action throughout the time period of the allegations in this Complaint.

82.     At all times relevant hereto, Defendant Jackson was a state actor employed by Prince Georgie's County and acted under color of law.

83.      By the acts and omissions described above, Defendants maintained a pattern and practice of racial harassment and discrimination.

84.     At all times mentioned herein, Defendants maintained customs, policies, and/or practices that proximately caused and continue to cause, and were likely to lead and continue to lead to, the violation of Plaintiff's constitutional and civil rights resulting in adverse employment actions against Plaintiff. These acts, omissions, customs, policies, and practices include, acts of discrimination and harassment including, but not limited to:

       a. Defendant Jackson's racially motivated attack and assault of Plaintiff in the workplace;

       b. Failing to adequately respond after Plaintiff suffered a racially-motivated attack from a co-worker while in the workplace, such as Defendant's failure to provide medical assistance or call the police to the scene after the violent assault;

c. Failing to prevent, correct, and eliminate the discriminatory assault against Plaintiff and failing to adequately discipline her attacker, Defendant Jackson;

d. Failing to and refusing to provide Plaintiff with reasonable accommodations to protect her and provide her with a safe workplace environment;

e. Conditioning a safe workplace environment upon the execution of a release from civil liability, and implying to Plaintiff that she would suffer loss of employment if she did not execute the release;

f. Unlawfully suspending Plaintiff, the victim, and otherwise taking wrongful adverse employment action against her after the attack;

g. Imposing the same suspension punishment upon Plaintiff, the victim, as that given to Defendant Jackson, her attacker;

h. Wrongfully denying Plaintiff's workers compensation claim, disability leave, and the full extent of medical leave she required;

i. Taking retaliatory action against Plaintiff without legitimate, non-discriminatory explanation, ultimately forcing Plaintiff to retire;

j. Creating and/or perpetuating a racially hostile workplace environment;

k. Harassing Plaintiff and pressuring her to agree to terms of a global settlement against her interests; and

l. Otherwise failing to comply with their responsibility mandated by 42 U.S.C. § 1983.

85.     The Defendants have, by the actions described herein, acted under the color of state law to discriminate against Plaintiff on the basis of her race, thereby depriving her of rights, privileges, and immunities secured to her by the Constitution and laws of the United States and

the State of Maryland, and in direct violation of the Fourteenth Amendment to the United States

Constitution. Such injury has been and will continue to be irreparable.

86.     The actions of Defendants, in depriving Plaintiff of her constitutional and civil

rights, were willful and malicious and constitute a continuing violation of the Fourteenth

Amendment.

87.     As a direct and proximate result of Defendant and its agents' conduct, Plaintiff

has been caused to suffer and did suffer from injuries, including but not limited to physical

injuries, economic losses, emotional and mental distress including but not limited to anguish,

anxiety, embarrassment, and humiliation.

WHEREFORE, Plaintiff demands damages, injunctive, and other relief as requested

below.

**COUNT IV**
**Retaliation**
**In Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(b)**
**(Plaintiff v. Defendant Prince George's County)**

88.     Plaintiff adopts and incorporates each and every allegation contained in each of

the foregoing paragraphs as if fully restated herein.

89.     At all times relevant hereto, Plaintiff engaged in protected activity under Title

VII, and as a result of that protected activity, suffered materially adverse employment action by

Defendant Prince George's County.

90.     Plaintiff engaged in protected activity.  This protected activity includes,: but is not

limited to: a.) her filing a notice of discrimination and tort claims on January 31, 2020; b.) her

filing of a peace order and criminal charges against Ms. Jackson on January 17, 2020; c.) her

filing of an EEOC claim on May 22, 2020, and d.) her filing of a notice of appeal of the

discriminatory discipline issued against her.  This protected activity also included  speaking with

Human Resources and reporting Defendant Jackson's attack of her to the Associate Director;

requesting a transfer needed for her own safety and to maintain the terms of the peace order.

91.     In response to Plaintiff's protected activity, and because of such activity,

Defendant Prince George's County retaliated against Plaintiff and caused her to suffer adverse

action in numerous ways, including but not limited to:

> a. Failing to adequately respond after Plaintiff suffered a racially-motivated attack
>
> from a co-worker while in the workplace. such as Defendant's failure to
>
> provide medical assistance or call the police to the scene after the violent
>
> assault;
>
> b. Failing to prevent, correct, and eliminate the discriminatory assault against
>
> Plaintiff and failing to adequately discipline her attacker, Defendant Jackson;
>
> c. Failing to and refusing to provide Plaintiff with reasonable accommodations to
>
> protect her and provide her with a safe workplace environment;
>
> d. Refusing to agree to Plaintiff's permanent transfer or otherwise provide her
>
> with a safe workplace, unless she signed a release of her legitimate
>
> discrimination and tort claims against Defendants, and implying to Plaintiff that
>
> she would suffer loss of employment if she did not execute the release;
>
> e. Wrongfully denying Plaintiff's workers' compensation claims;
>
> f. Wrongfully denying Plaintiff's disability leave and the full extent of medical
>
> leave she required;
>
> g. Creating and/or perpetuating a racially hostile workplace environment;

      h. Harassing Plaintiff and pressuring her to agree to terms of a global settlement

         against her interests;

      i. Forcing Plaintiff to retire from the County; and

      j. Otherwise failing to comply with their responsibilities mandated by Title VII.

92.     Defendant engaged in all of the above-listed retaliatory conduct *after* they received formal notice of Plaintiff's constitutional, administrative, statutory, and common-law claims against them.

93.     Further, Defendant has continuously maintained that Plaintiff, the victim of the traumatic attack in their own workplace, was deserving of being suspended without pay and has wrongfully cast her as violent, aggressive, and instigating.

94.     Defendant's retaliatory conduct would dissuade a reasonable person from seeking remedial action for a racially motivated attack in the workplace.

95.     The actions of Defendants, in depriving Plaintiff of her civil rights, were willful and malicious and constitute a continuing violation of Title VII.

96.     As a direct and proximate result of Defendant and its agents' conduct, Plaintiff has been caused to suffer and did suffer from injuries, including but not limited to physical injuries, economic losses, emotional and mental distress including but not limited to anguish, anxiety, embarrassment, and humiliation.

WHEREFORE, Plaintiff demands damages, injunctive, and other relief as requested below.

**<u>COUNT V</u>**
**<u>Racial Discrimination</u>**
**In Violation of Md. Code, State Gov't § 20-606(a)**
**(Plaintiff v. Defendant Prince George's County)**

97.     Plaintiff adopts and incorporates each and every allegation contained in each of the foregoing paragraphs as if fully restated herein.

98.     By the acts and omissions described above, Defendant Prince George's County subjected Ms. Young to disparate terms and conditions of her employment on the basis of race in violation of Md. Code, State Gov't § 20-606(a).

99.     Pursuant to Md. Code § 20-606, also known as the Maryland Fair Employment Act,

> An employer may not: fail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of: the individual's race[;] fail or refuse to make a reasonable accommodation for the known disability of an otherwise qualified employee; or engage in harassment of an employee.

Md. Code, State Gov't § 20-606(a).

100.    At all relevant times herein, Defendant Prince George's County and OIT were Plaintiff's employer.

101.    As an employee of Defendant, Plaintiff was entitled to the protections of Md. Code, State Gov't § 20-606(a), which prohibits discrimination in the workplace based on a person's race.

102.    Defendant Jackson was at all relevant times an employee of Defendant Prince George's County and OIT.

103.    In violation of  Md. Code, State Gov't § 20-606, Defendant Prince George's County conducted unlawful employment practices which include, but are not limited to:

> a. Failing to adequately respond after Plaintiff suffered a racially-motivated attack
>
>   from a co-worker while in the workplace, such as Defendant's failure to

provide medical assistance or call the police to the scene after the violent assault;

b. Failing to prevent, correct, and eliminate the discriminatory assault against Plaintiff and failing to adequately discipline her attacker, Defendant Jackson;

c. Failing to and refusing to provide Plaintiff with reasonable accommodations to protect her and provide her with a safe workplace environment;

d. Conditioning a safe workplace environment upon the execution of a release from civil liability, and implying to Plaintiff that she would suffer loss of employment if she did not execute the release;

e. Unlawfully suspending Plaintiff, the victim, and otherwise taking wrongful adverse employment action against her after the attack;

f. Imposing the same suspension punishment upon Plaintiff, the victim, as that given to Defendant Jackson, her attacker;

g. Wrongfully denying Plaintiff's workers compensation claim, disability leave, and the full extent of medical leave she required;

h. Taking retaliatory action against Plaintiff without legitimate, non-discriminatory explanation, ultimately forcing Plaintiff to retire;

i. Creating and/or perpetuating a racially hostile workplace environment;

j. Harassing Plaintiff and pressuring her to agree to terms of a global settlement against her interests; and

k. Otherwise failing to comply with their responsibility mandated by Md. Code, State Gov't § 20-606.

104.     In perpetrating the above-described actions, Defendant subjected Plaintiff to severe and/or pervasive racial harassment as alleged above such that it altered the terms and/or conditions of Plaintiff's employment.

105.     Defendant knew or should have known about the severe and/or pervasive comments and conduct of Defendant Jackson. Further, Plaintiff's supervisors participated in and encouraged the severe and/or pervasive harassment on the basis of race as alleged herein. Plaintiff's supervisors failed to take appropriate steps to prevent and/or correct the harassment, instead punishing the victim of the racially-fueled attack.

106.     The conduct was unwelcomed by Plaintiff.

107.     Defendant and its agents' conduct, including but not limited to the conduct of Defendant Jackson, directly and proximately caused the injuries, harm, and damages to Plaintiff.

108.     In engaging in the acts and omissions alleged herein, Defendants acted knowingly, intentionally, maliciously, and/or with reckless indifference to Plaintiff's rights.

109.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff was, and continues to be deprived of her civil rights.

110.     As a direct and proximate result of Defendant Prince George's County and its agents' conduct, Plaintiff has been caused to suffer and did suffer from injuries including but not limited to physical injuries, economic losses, emotional and mental distress including but not limited to anguish, anxiety, embarrassment, and humiliation.

WHEREFORE, Plaintiff demands damages, injunctive, and other relief as requested below.

**COUNT VI**
**Retaliation**
**In Violation of Md. Code, State Gov't § 20-606(a)**
**(Plaintiff v. Defendant Prince George's County**

111.    Plaintiff adopts and incorporates each and every allegation contained in each of the foregoing paragraphs as if fully restated herein.

112.    At all times relevant hereto, Plaintiff engaged in protected activity under Md. Code § 20-606(a), and as a result of that protected activity, suffered materially adverse employment action by Defendant Prince George's County.

113.    Plaintiff engaged in protected activity. This protected activity included, but is not limited to: a.) her filing a notice of discrimination and tort claims on January 31, 2020; b.) her filing of a peace order and criminal charges against Ms. Jackson on January 17, 2020; c.) her filing of an EEOC claim on May 22, 2020, and d.) her filing of a notice of appeal of the discriminatory discipline issued against her.  This protected activity also included  speaking with Human Resources and reporting Defendant Jackson's attack of her to the Associate Director; requesting a transfer needed for her own safety and to maintain the terms of the peace order.

114.    In response to Plaintiff's protected activity, and because of such activity, Defendant Prince George's County retaliated against Plaintiff and caused her to suffer adverse action in numerous ways, including but not limited to:

> a. Failing to adequately respond after Plaintiff suffered a racially-motivated attack from a co-worker while in the workplace;
>
> b. Failing to prevent, correct, and eliminate the discriminatory assault against Plaintiff and failing to adequately discipline her attacker, Defendant Jackson;
>
> c. Failing to and refusing to provide Plaintiff with reasonable accommodations to protect her and provide her with a safe workplace environment;
>
> d. Refusing to agree to Plaintiff's permanent transfer or otherwise provide her with a safe workplace, unless she signed a release of her legitimate

discrimination and tort claims against Defendants, and implying to Plaintiff that
she would suffer loss of employment if she did not execute the release;

e. Wrongfully denying Plaintiff's workers' compensation claims;

f. Wrongfully denying Plaintiff's disability leave and the full extent of medical
leave she required;

g. Harassing Plaintiff and pressuring her to agree to terms of a global settlement
against her interests;

h. Creating and/or perpetuating a racially hostile workplace environment;

i. Forcing Plaintiff to retire from the County; and

j. Otherwise failing to comply with their responsibilities mandated by Md. Code §
20-606(a).

115.    Defendant engaged in all of the above-listed retaliatory conduct *after* they
received formal notice of Plaintiff's constitutional, administrative, statutory, and common-law
claims against them.

116.    Further, Defendant has continuously maintained that Plaintiff, the victim of the
traumatic attack, was deserving of being suspended without pay and has wrongfully cast her as
violent, aggressive, and instigating.

117.    Defendant's retaliatory conduct would dissuade a reasonable person from seeking
remedial action for a racially motivated attack in the workplace.

118.    The actions of Defendants, in depriving Plaintiff of her civil rights, were willful
and malicious and constitute a continuing violation of Md. Code § 20-606(a).

119.    As a direct and proximate result of Defendant and its agents' conduct, Plaintiff
has been caused to suffer and did suffer from injuries, including but not limited to physical

injuries, economic losses, emotional and mental distress including but not limited to anguish, anxiety, embarrassment, and humiliation.

WHEREFORE, Plaintiff demands damages, injunctive, and other relief as requested below.

<u>**COUNT VII**</u>
<u>**Racial Discrimination**</u>
**In Violation of Prince George's County Code § 2-222**
**(Plaintiff v. Defendant Prince George's County)**

120.    Plaintiff adopts and incorporates each and every allegation contained in each of the foregoing paragraphs as if fully restated herein.

121.    By the acts and omissions described above, Defendant subjected Ms. Young to disparate terms and conditions of her employment on the basis of her race, in violation of Prince George's County Code § 2-222.

122.    At all relevant times herein, Defendants Prince George's County and OIT were Plaintiff's employers.

123.    As an employee of Defendants, Plaintiff was entitled to the protections of Prince George's County Code § 2-222, which prohibits discrimination in the workplace based on a person's race.

124.    Specifically, Defendant Prince George's County, as Plaintiff's employer, acted against her due to racial discrimination in numerous way including, but not limited to:

a. Failing to adequately respond after Plaintiff suffered a racially-motivated attack from a co-worker while in the workplace, such as Defendant's failure to provide medical assistance or call the police to the scene after the violent assault;

31

b. Failing to prevent, correct, and eliminate the discriminatory assault against Plaintiff and failing to adequately discipline her attacker, Defendant Jackson;

c. Conditioning a safe workplace environment upon the execution of a release from civil liability, and implying to plaintiff that she would suffer loss of employment if she did not execute the release;

d. Failing to and refusing to provide Plaintiff with reasonable accommodations to protect her and provide her with a safe workplace environment;

e. Unlawfully suspending Plaintiff, the victim, and otherwise taking wrongful adverse employment action against her after the attack;

f. Imposing the same suspension punishment upon Plaintiff, the victim, as that given to Defendant Jackson, her attacker;

g. Wrongfully denying Plaintiff's workers compensation claim, disability leave, and the full extent of medical leave she required;

h. Harassing Plaintiff and pressuring her to agree to terms of a global settlement against her interests;

i. Taking retaliatory action against Plaintiff without legitimate, non-discriminatory explanation, ultimately forcing Plaintiff to retire;

j. Creating and/or perpetuating a racially hostile workplace environment; and

k. Otherwise failing to comply with their responsibilities mandated by Prince George's County Code § 2-222.

125.    In perpetrating the above-described actions, Defendant subjected Plaintiff to severe and/or pervasive racial harassment as alleged above such that it altered the terms and/or conditions of her employment.

126.    Defendant knew or should have known about the severe and/or pervasive comments and conduct of Defendant Jackson. Further, Plaintiff's supervisors participated in and encouraged the severe and/or pervasive harassment on the basis of race as alleged herein. Plaintiff's supervisors failed to take appropriate steps to prevent and/or correct the harassment, instead punishing the victim of the racially-fueled attack.

127.    The conduct was unwelcomed by Plaintiff.

128.    Defendant and its agents' conduct, including but not limited to the conduct of Defendant Jackson, directly and proximately caused the injuries, harm, and damages to Plaintiff.

129.    In engaging in the acts and omissions alleged herein, Defendant acted knowingly, intentionally, maliciously, and/or with reckless indifference to Plaintiff's rights.

130.    As a direct and proximate result of Defendant's acts and omissions, Plaintiff was, and continues to be deprived of her civil rights.

131.    As a direct and proximate result of Defendant Prince George's County and its agents' conduct, Plaintiff has been caused to suffer and did suffer from injuries including but not limited to physical injuries, economic losses, emotional and mental distress including but not limited to anguish, anxiety, embarrassment, and humiliation.

WHEREFORE, Plaintiff demands damages, injunctive, and other relief as requested below.

## COUNT VIII
### Retaliation
### In Violation of Prince George's County Code § 2-222
### (Plaintiff v. Defendant Prince George's County)

132.    Plaintiff adopts and incorporates each and every allegation contained in each of the foregoing paragraphs as if fully restated herein.

133.    At all times relevant hereto, Plaintiff engaged in protected activity under Prince George's County Code § 2-222, and as a result of that protected activity, suffered materially adverse employment action by Defendant Prince George's County.

134.    Plaintiff engaged in protected activity which included, but is not limited to: a.) her filing a notice of discrimination and tort claims on January 31, 2020; b.) her filing of a peace order and criminal charges against Ms. Jackson on January 17, 2020; c.) her filing of an EEOC claim on May 22, 2020, and d.) her filing of a notice of appeal of the discriminatory discipline issued against her.  This protected activity also included speaking with Human Resources and reporting Defendant Jackson's attack of her to the Associate Director;  requesting a transfer needed for her own safety and to maintain the terms of the peace order.

135.    In response to Plaintiff's protected activity, and because of such activity, Defendant Prince George's County retaliated against Plaintiff and caused her to suffer adverse action in numerous ways, including but not limited to:

 a. Failing to adequately respond after Plaintiff suffered a racially-motivated attack from a co-worker while in the workplace;

 b. Failing to prevent, correct, and eliminate the discriminatory assault against Plaintiff and failing to adequately discipline her attacker, Defendant Jackson;

 c. Failing to and refusing to provide Plaintiff with reasonable accommodations to protect her and provide her with a safe workplace environment;

 d. Refusing to agree to Plaintiff's permanent transfer or otherwise provide her with a safe workplace, unless she signed a release of her legitimate discrimination and tort claims against Defendants, and implying to Plaintiff that she would suffer loss of employment if she did not execute the release;

    e. Wrongfully denying Plaintiff's workers' compensation claims;

    f. Wrongfully denying Plaintiff's disability leave and the full extent of medical leave she required;

    g. Harassing Plaintiff and pressuring her to agree to terms of a global settlement against her interests;

    h. Creating and/or perpetuating a racially hostile workplace environment;

    i. Forcing Plaintiff to retire from the County; and

    j. Otherwise failing to comply with their responsibilities mandated by Prince George's County Code § 2-222.

136.    Defendant engaged in all of the above-listed retaliatory conduct *after* they received formal notice of Plaintiff's constitutional, administrative, statutory, and common-law claims against them.

137.    Further, Defendant has continuously maintained that Plaintiff, the victim of the traumatic attack, was deserving of being suspended without pay and has wrongfully cast her as violent, aggressive, and instigating.

138.    Defendant's retaliatory conduct would dissuade a reasonable person from seeking remedial action for a racially motivated attack in the workplace.

139.    The actions of Defendants, in depriving Plaintiff of her civil rights, were willful and malicious and constitute a continuing violation of Prince George's County Code § 2-222.

140.    As a direct and proximate result of Defendant and its agents' conduct, Plaintiff has been caused to suffer and did suffer from injuries, including but not limited to physical injuries, economic losses, emotional and mental distress including but not limited to anguish, anxiety, embarrassment, and humiliation.

WHEREFORE, Plaintiff demands damages, injunctive, and other relief as requested below.

**COUNT IX**
**Battery**
**(Plaintiff v. All Defendants)**

141.    Plaintiff adopts and incorporates each and every allegation contained in each of the foregoing paragraphs as if fully restated herein.

142.    Defendant Jackson intentionally touched Ms. Young in a harmful and offensive manner. Specifically, Defendant Jackson tackled, pushed, and choked Ms. Young at the workplace holiday party.

143.    Ms. Young did not give Defendant Jackson permission to touch her in that or any manner.

144.    Defendant Jackson's actions were undertaken deliberately, with ill-will and actual malice. There was no legal justification for Defendant Jackson's battery.

145.    In doing the foregoing acts, Defendant Jackson was acting in her official capacity as an employee of Prince George's County.

146.    As a result, OIT and Prince George's County are vicariously liable because Defendant Jackson was acting within the scope of her employment in the workplace, and because the County ultimately ratified her conduct when it imposed disproportionate disciplinary action. The County's disciplinary decisions here issued a clear message in the workplace that the defendant's vicious attack on a White woman would not be subject to serious discipline, and the victim and complainant would be punished as well.

147.    As a direct and proximate result of Defendant Prince George's County and its agents' conduct, Plaintiff has been caused to suffer and did suffer from injuries including but not

limited to physical injuries, economic losses, emotional and mental distress including but not limited to anguish, anxiety, embarrassment, and humiliation.

WHEREFORE, Plaintiff demands damages, injunctive, and other relief as requested below.

## COUNT X
### Intentional Infliction of Emotional Distress
### (Plaintiff v. All Defendants)

148.    Plaintiff adopts and incorporates each and every allegation contained in each of the foregoing paragraphs as if fully restated herein.

149.    Defendant Jackson assaulted Ms. Young.

150.    Ms. Young required medical attention, and was treated for

151.    Defendants' conduct was intentional, reckless, and in deliberate disregard of a high degree of probability that emotional distress would result to Plaintiff.

152.    The foresaid conduct by Defendants' agent was extreme and outrageous and beyond the bounds of decency in society. Defendant Jackson's violent battery, without legal justification, was undertaken deliberately and with actual malice.

153.    Defendant Jackson knew or should have known that engaging in acts of physical violence at the workplace constituted behavior so outrageous in character and so extreme in degree that it went beyond all possible bounds of decency and constituted behavior intolerable in a civilized community.

154.    At all times relevant hereto, Defendant Jackson acted with ill-will and actual malice.

155.    In doing the foregoing acts, Defendant Jackson was acting in her official capacity as an employee of Prince George's County.

156.    As a direct and proximate result of Defendant Prince George's County and its agents' conduct, Plaintiff has been caused to suffer and did suffer from injuries including but not limited to physical injuries, economic losses, emotional and mental distress including but not limited to anguish, anxiety, embarrassment, and humiliation.

WHEREFORE, Plaintiff demands damages, injunctive, and other relief as requested below.

## PRAYER FOR RELIEF

WHEREFORE, as relief for the causes of action set forth in Counts I-VI hereof, Plaintiff prays as follows:

A.    That this Court enters an order declaring that the acts and practices of Defendants violate the laws of the United States, the State of Maryland, and Prince George's County, MD;

B.    Issue a permanent injunction that (i) prohibits Defendant Prince George's County, its agents, employees, and successors from engaging in the discriminatory and retaliatory employment practices complaint of herein; and (ii) imposes a prohibition of similar conduct in the future by:

(i)    Requiring three-year monitoring of all employment complaints by Defendant Prince George's County Office of Information Technology to prevent any further racial discrimination in employment, including the hiring and training of new employees;

      (ii)    Ordering Defendants to refrain from retaliating against Plaintiff for making complaints about discrimination and/or retaliation by Defendants; and

      (iii)   Removing all mention of this incident from Plaintiff's personnel records.

C.    Award Plaintiff economic and compensatory damages, plus interest, in an amount to be proven at trial, exceeding $75,000, sufficient to redress the harms that she suffered, including economic, physical injuries, pain and suffering, emotional and mental distress, anguish, anxiety, embarrassment, humiliation, and mental anguish;

D.    Award Plaintiff appropriate punitive damages, against Defendant Jackson in her individual capacity for the applicable causes of action, in an amount to be proven at trial that would punish Defendant Jackson for her knowing, intentional, willful, and reckless disregard of Plaintiff's established rights as alleged herein and enter any and all injunctive decrees and relief necessary to effectively prevent all Defendants from engaging in similar unlawful racial discrimination and retaliation in the future;

E.    Award Plaintiff reasonable attorneys' fees and costs;

F.    Award such other and further relief in any form that this honorable Court deems just and proper under the facts and circumstances as proved at trial.

**Dated**: June 10, 2002

## **JURY DEMAND**

Plaintiff demands a trial by a jury on all counts so triable.

By:    /s/ Timothy F. Mahoney _____
          Timothy F. Maloney

Respectfully submitted,

By:    /s/ Timothy F. Maloney _____
          Timothy F. Maloney, Esq. (#03381)
          JOSEPH, GREENWALD & LAAKE, P.A.
          6404 Ivy Lane, Suite 400
          Greenbelt, Maryland 20770
          301/220-2200 (tel.)
          301/220-1214 (fax)
          tmaloney@jgllaw.com
          Attorney for the Plaintiff