IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LAURA YOUNG, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. BPG-22-1422 |
| PRINCE GEORGE'S COUNTY, MARYLAND, *et al.*, | * | |
| | * | |
| Defendants. | | |
| * * * * * * | | |

**MEMORANDUM OPINION**

The above-referenced case was referred to the undersigned for all proceedings with the consent of the parties, pursuant to 28 U.S.C. 636(c) and Local Rule 301.4.[1] (ECF No. 14). Currently before the Court are defendant Prince George's County, Maryland's Motion to Dismiss Counts III, IX, and X of the Complaint ("Motion") (ECF No. 19) and plaintiff Laura Young's Opposition to the Motion (ECF No. 22). No hearing is deemed necessary. Loc. R. 105.6. For the reasons discussed herein, the Motion will be granted in part and denied in part.

**I.   BACKGROUND**

This lawsuit arises from an altercation between two employees of defendant Prince George's County, Maryland (the "County") during a workplace holiday party. Plaintiff Laura Young ("Ms. Young") alleges that the County (her former employer) created and perpetuated a racially hostile work environment, subjected her to racial discrimination, failed to protect her from racial harassment, and retaliated against her for complaining about the assault and racial

---

[1] This case was previously assigned to Judge Sullivan. It was reassigned to me on November 30, 2022.

discrimination in her workplace. Ms. Young's Complaint names two defendants: the County and Tanya Jackson ("Ms. Jackson"), the alleged assailant.

Ms. Young asserts the following claims: racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(b) ("Title VII") (Count I); racial discrimination in violation of 42 U.S.C. § 1981 (Count II); racial discrimination in violation of the Fourteenth Amendment and 42 U.S.C. § 1983 (Count III); retaliation in violation of Title VII (Count IV); racial discrimination in violation of Md. Code, State Gov't § 20-606(a) (Count V); retaliation in violation of Md. Code, State Gov't § 20-606(a) (Count VI); racial discrimination in violation of Prince George's County Code § 2-222 (Count VII); retaliation in violation of Prince George's County Code § 2-222 (Count VIII); battery (Count IX); and intentional infliction of emotional distress (Count X). (ECF No. 1). The County is named as a defendant as to all counts; Ms. Jackson is named as a defendant only in Counts II, III, IX, and X. (Id.)

The County moves to dismiss Counts III, IX, and X. (ECF No. 19). In her response to the Motion, Ms. Young has agreed to "withdraw[] without prejudice" her claims against the County in Count IX (battery) and X (intentional infliction of emotional distress). (ECF No. 22-1 at 1 n.1). Ms. Young states that she does not "waive her right to hold Prince George's County liable for any judgment entered against Defendant Tanya Jackson pursuant to Md. Cts. & Jud. Proc. § 5-303(b)(1) or any other applicable law." (Id.) Because Ms. Young agrees to withdraw her claims against the County in Counts IX and X, the Court will dismiss these claims, but only as to the County, and the dismissal is without prejudice to Ms. Young's right to argue that the County may be liable for any judgment entered against Ms. Jackson on these claims.

Ms. Young opposes the County's Motion as to Count III. (ECF No. 22). Because the time has passed for the County to file a reply, *see* Loc. R. 105.2, the Motion is ripe for decision.

II.     **STANDARD OF REVIEW**

Rule 12(b)(6) permits a court to dismiss a complaint if it fails to "state a claim upon which relief can be granted." "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint, [and not to] resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (internal quotation marks omitted). A complaint must consist of "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). When considering a motion to dismiss, a court must accept as true the well-pled allegations of the complaint and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). While a court must take the facts in the light most favorable to the plaintiff, it "need not accept the legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint generally "does not need detailed factual allegations." Id. So long as the factual allegations are "enough to raise a right to relief above the speculative level," the complaint will be deemed sufficient. Id. A "well-pleaded complaint may

proceed even if it strikes a savvy judge that actual proof of those facts is improbable and that a recovery is very remote and unlikely." Id. at 556 (internal quotation marks omitted).

### III.    DISCUSSION

####    A.    Factual Allegations

For the sake of this Motion, the Court accepts the allegations of the Complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to Ms. Young. Ibarra, 120 F.3d at 474.

Ms. Young is a white woman. (ECF No. 1 at ¶ 1). She was an employee of the County for over 35 years, during which time she "had an impeccable record of service . . . in a variety of roles and departments." (Id. at ¶ 18). In 2019, Ms. Young worked for the County's Office of Information Technology in the Asset Management Division. (Id.)

On December 19, 2019, Ms. Young attended a holiday party for County employees. (Id. at ¶ 19). The party was scheduled from 2:00 to 4:00 p.m. in a room at the Office of Information Technology. (Id.) Employees remained "clocked in" during the party. (Id.) Ms. Young arrived to the party at 2:45 p.m. and observed that the "festivities appeared to be winding-down," with the food and "White Elephant" gift exchange portions of the event having been completed. (Id. at ¶ 22). She was disappointed that her colleagues did not wait for her before starting the party "as she had diligently informed them that she would be late." (Id.)

Soon after her arrival, while Ms. Young was walking to the drink table to get a beverage, Ms. Jackson "walked over and bumped into her deliberately and without provocation." (Id. at ¶ 23). Ms. Young did not react but Ms. Jackson followed her, "bump[ing] into her once more, again deliberately and without provocation." (Id.) Ms. Young still did not react. (Id.)

4

After taking a seat, Ms. Young discussed her disappointment about the party with her colleagues. (Id.) Ms. Jackson offered Ms. Young a refund of the money she had paid for the lunch, and Ms. Young agreed to accept the refund. (Id. at ¶ 27). Tensions between Ms. Young and her colleagues increased, and Ms. Jackson called Ms. Young a profane name. (Id. at ¶ 29). In response, Ms. Young told Ms. Jackson (a Black woman) that she was "acting ghetto," which prompted Ms. Jackson to jump out of her chair and profanely describe Ms. Young as a beneficiary of "white privilege." (Id. at ¶ 31).

Ms. Jackson attacked Ms. Young, pushing her over a table and chairs and into a filing cabinet. (Id. at ¶ 33). Coworkers intervened to restrain Ms. Jackson, but she continued to attack Ms. Young when they released her, "placing her hands around Ms. Young's throat and violently choking her." (Id. at ¶ 34). Ms. Jackson was eventually escorted from the room by a security guard. (Id.) In response to the attack, "no one in the office offered [Ms. Young] assistance, medical attention, or inquired into her well-being." (Id. at ¶ 35). And when Ms. Young attempted to report the assault to the Associate Director of her office, Glenn Mains, Ms. Young was instructed to stay in her office. (Id. at ¶ 36).

Eventually, Ms. Young was interviewed about the incident and asked whether she needed medical attention, which she declined. (Id. at ¶ 38). After Ms. Young left work, she traveled directly to Upper Marlboro to file assault charges against Ms. Jackson. (Id. at ¶ 40). Then, after some delay related to the County's submission of forms required for workers' compensation insurance, Ms. Young received treatment for "left shoulder pain and bruising, right femur bruising and contusions, right forearm bruising and contusions, and lower and upper back pain and neck pain." (Id. at ¶¶ 41, 42). Later, Ms. Young underwent an MRI, which revealed that she had suffered a torn rotator cuff in the assault. (Id. at ¶ 43). Her treating provider determined that Ms. Young

5

could not return to work with her injuries, and ultimately Ms. Young was not medically cleared to return to work until March 6, 2020. (Id. at ¶¶ 43, 53).

On December 20, 2019, the day after the assault, the County informed Ms. Young that she was suspended for three days for a "breach of peace" arising from her "participation in a verbal altercation that escalated to a violent exchange." (Id. at ¶ 47). The County stated that the suspension was based on Prince George's County Code, Personnel Law, Section 16-193(c)(4)(D) (allowing for the three-day suspension of an employee who "commits a breach of peace during hours of work" when the "facts and circumstances surrounding the commission of the act are not in dispute"). On January 13, 2020, the County notified Ms. Young that she would be suspended for a total of 10 days without pay for "an altercation [that] threatened the safety of other employees and has negatively impacted the efficient and/or safe operations of the Asset Management Division." (Id. at ¶ 49). The County also revoked Ms. Young's telework privileges. (Id.) Ms. Young alleges that the County's January 13 notice "falsely stated that she was responsible for an altercation that threatened the safety of employees." (Id.) According to Ms. Young, she was the sole victim of the altercation, and she "had not herself engaged in any altercation or attack." (Id.) The "County had no basis to suspend Ms. Young for any amount of time." (Id. at ¶ 51). Ms. Jackson received the same discipline as Ms. Young (a 10-day suspension without pay).[2] (Id. at ¶ 51). Ms. Young alleges that the County "disciplined [her] because she is a White female." (Id. at ¶ 52).

On January 21, 2020, the District Court of Maryland for Prince George's County granted Ms. Young a peace order against Ms. Jackson, finding that "Ms. Jackson assaulted Ms. Young and

---

[2] The County later reduced Ms. Young's suspension to "a total of seven working days."(Id. at ¶ 52). The County based this decision on Prince George's County Code, Personnel Law, Section 16-193(c)(4)(B) (allowing for the suspension of an employee for up to 20 days when the employee commits misconduct that would make the employee eligible for termination). (Id. at ¶ 50). It is unclear whether the County also reduced Ms. Jackson's suspension.

6

presented a continued threat to her physical safety." (Id. at ¶ 44). The court described Ms. Jackson's conduct during the assault as "completely outrageous" and "excessive." (Id. at ¶ 45).

On January 31, 2020, Ms. Young requested that the County transfer Ms. Jackson to another department "for Ms. Young's safety, and to comply with the stay away provisions of the peace order." (Id. at ¶ 53). The County did not grant Ms. Young's request. Rather than transferring Ms. Jackson to another department, the County transferred Ms. Young to a position at the County landfill. (Id.) And the County conditioned Ms. Young's permanent transfer (away from Ms. Jackson) on "Ms. Young's consent to a global settlement by the County." (Id. at ¶ 56). Ms. Young alleges that the County "declined to provide a safe permanent workplace until she executed a release [of] her civil and administrative claims against the County and Ms. Jackson," and that the County improperly pressured her to sign the release by suggesting that if she did not do so, her permanent transfer "may not be possible due to budget cuts from COVID-19." (Id. at ¶¶ 56-57). At some point, the County also denied Ms. Young's workers' compensation claim for injuries she sustained from the assault. (Id. at ¶ 59).

Ms. Young alleges that the County's decisions to discipline her, suspend her, transfer her to the landfill, and deny her workers' compensation claim were all motivated by racial discrimination. (Id. at ¶¶ 55, 59). She alleges that all of the supervisors who made these decisions were Black, and that "Ms. Jackson's friends in the office were also Black." (Id.) She also alleges that the County's actions were taken to retaliate against her for engaging in protected activities, including her filing of a notice of discrimination and notice of tort claims on January 31, 2020, her filing of a peace order and criminal charges against Ms. Jackson on January 17, 2020, her filing of an Equal Employment Opportunity Commission claim on May 22, 2020, and her filing of a notice of appeal of the discipline issued against her. (Id. at ¶¶ 55, 57, 59). Ms. Young alleges that the

County's "discriminatory conduct is continuing in nature," with administrative proceedings before the County Personnel Board still pending. (Id. at ¶ 61).

On October 31, 2020, Ms. Young retired from the County because she was "unwilling to enter into an unfair settlement of her claims in order to obtain a safe workplace" and because of her "fear that she would be forced to work in the same workplace as Ms. Jackson." (Id. at ¶ 58). She alleges that the Defendants' wrongful conduct has resulted in her physical, mental, and emotional injuries. (Id. at ¶ 62).

### B. Municipal Liability Under § 1983

Section 1983 provides that "[e]very person, who, under color of state law causes the violation of another's federal rights shall be liable to the party injured by his conduct." Owens v. Baltimore City State's Att'ys Off., 767 F.3d 379, 402 (4th Cir. 2014) (internal quotation marks omitted); 18 U.S.C. § 1983. Municipalities qualify as "persons" under the statute. Id. (citing Monell v. New York City Dep't of Soc. Services, 436 U.S. 658, 690 (1978)). Unlike public officials, municipalities do not enjoy qualified immunity. Id. (citing Owen v. City of Independence, 445 U.S. 622 (1980)). Still, "the Supreme Court has expressly cabined [municipalities'] liability: under Monell, a municipality is only liable for its own illegal acts." Id. (citing Monell, 436 U.S. at 691 (emphasis in original)). Under this standard, a municipality is liable under § 1983 if it follows a "custom, policy, or practice by which local officials violate a plaintiff's constitutional rights." Id.; see also Johnson v. Baltimore Police Dep't, No. ELH-19-698, 2020 WL 1169739, at *30 (D. Md. Mar. 10, 2020) ("[A] viable § 1983 Monell claim consists of two components: (1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights."). A plaintiff may demonstrate the existence of an official policy in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (quoting Carter v. Morris, 164 F.3d 215, 217 (4th Cir. 1999)).

"An official policy often refers to 'formal rules or understandings . . . that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time.'" Semple v. City of Moundsville, 195 F.3d 708, 712 (4th Cir. 1999) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 480 (1986)). Official policy "must be contrasted with 'episodic exercises of discretion in the operational details of government.'" Id. (quoting Spell v. McDaniel, 824 F.2d 1380, 1386-87 (4th Cir. 1987)). Yet a "governmental unit may create an official policy by making a single decision regarding a course of action in response to particular circumstances." Id. (citing Pembaur, 475 U.S. at 481). In such a case, municipal liability will attach "only when the decision maker is the municipality's governing body, a municipal agency, or an official possessing final authority to create official policy." Id.

While "prevailing on the merits of a Monell claim is difficult, simply alleging such a claim is, by definition, easier." Owens, 767 F.3d at 403. To survive a motion to dismiss under Rule 12(b)(6), a complaint need only allege facts that, if true, "state a claim to relief that is plausible on its face." Id. (internal quotation marks omitted). "The recitation of facts need not be particularly detailed and the chance of success need not be particularly high." Id. There is no heightened pleading standard for a Monell claim. See Jordan ex rel. Jordan v. Jackson, 15 F.3d 333, 338-40 (4th Cir. 1994) (citing Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit, 507 U.S. 163, 164 (1993)).

Evaluating a complaint under Rule 12(b)(6) is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. "In the context of Monell liability, it will often be the case that a plaintiff lacks specific details regarding the municipal actor's internal policies and training procedures before discovery." Johnson, 2020 WL 1169739, at *34. While boilerplate allegations are insufficient, the Court will not expect a plaintiff "to possess a rich set of facts concerning the allegedly unconstitutional policy and the responsible policymakers" before the parties have engaged in discovery. Id.; McCullough v. Anne Arundel Cnty., Maryland, No. CCB-19-926, 2020 WL 836235, at *6 (D. Md. Feb. 20, 2020) (explaining that the Fourth Circuit "has set a low pleading standard for Monell claims"); Burgess v. Baltimore Police Dep't, No. RDB-15-0834, 2016 WL 795975, at *10 (D. Md. Mar. 1, 2016) (explaining that in a complaint "a plaintiff need only submit facts sufficient to plead a plausible claim for relief" and that "it is the purpose of discovery to establish the presence or absence of facts with which the plaintiff intends to prove his claim") (emphasis in original).

      C.      **Plaintiff Has Stated a Valid § 1983 Claim Against the County**

In Count III, Ms. Young alleges that the County discriminated against her on the basis of race through its official customs, policies, and practices, depriving her of the rights guaranteed under the Fourteenth Amendment. (ECF No. 1 at ¶¶ 79-87). She lists the ways that the County discriminated against her, which include: failing to prevent and adequately respond to Ms. Jackson's racially-motivated assault in the workplace; failing to reasonably accommodate Ms. Young's request for a safe workplace after the racially-motivated assault; requiring Ms. Young to release the County from civil liability in exchange for a safe workplace and continued employment; unlawfully suspending Ms. Young and taking other adverse employment actions against her because of her race and because she was the victim of a racially-motivated assault;

wrongfully denying Ms. Young's workers' compensation claim, disability leave, and full medical leave requests; retaliating against Ms. Young for no legitimate, nondiscriminatory reason; perpetuating a racially hostile work environment; and, harassing and pressuring Ms. Young to agree "to terms of a global settlement against her interests." (Id. at ¶ 84). Ms. Young alleges that the County committed all these discriminatory acts because of her race. (Id. at ¶ 85).

The County argues that Ms. Young "fails to sufficiently plead a Monell claim against the County based on her single incident where she fails to identify any alleged unconstitutional policy, practice or custom." (ECF No. 19-1 at 5). The County also argues that Ms. Jackson's assault of Ms. Young was, at most, a "single isolated incident" by a co-worker, which is insufficient to establish an official policy attributable to the County. (Id.) And the County discounts Ms. Young's other allegations—regarding her discipline, transfer, denial of workers' compensation, and forced retirement—by construing the allegations in a light favorable to the County and by stating that Ms. Young "has a pending personnel matter to address" the issues. (Id. at 5-8).

The allegations in Count III mirror Ms. Young's allegations against the County in Counts I (race discrimination under Title VII), II (race discrimination under § 1981), IV (retaliation under Title VII), V (race discrimination under Maryland law), VI (retaliation under Maryland law), VII (race discrimination under Prince George's County Code), and VIII (retaliation under Prince George's County Code). In each of these claims, Ms. Young alleges that the County unlawfully discriminated or retaliated against her in violation of federal, state, and local law. The County does not suggest that Ms. Young has failed to plead plausible claims of discrimination and retaliation in these counts. This is for good reason, as Ms. Young's 40-page Complaint lays out a plausible

case that the County discriminated against her on the basis of race and retaliated against her for engaging in protected activity.[3]

An important difference between Count III and Ms. Young's other claims is that the doctrine of respondeat superior does not apply to Monell claims. Buffington v. Baltimore Cnty., Md., 913 F.2d 113, 122 (4th Cir. 1990) (explaining that under § 1983, "municipal liability cannot be premised on respondeat superior or vicarious liability"). But Ms. Young's Monell claim is not premised on the County's responsibility for Ms. Jackson's assault on the basis of respondeat superior. The gravamen of Ms. Young's claim concerns the County's response to the assault, through the County's adherence to its official policies and through the actions of its final decisionmakers. Ms. Young alleges that the County's handling of the assault and its subsequent actions related to her employment were unconstitutionally discriminatory.

To the extent that Ms. Young's allegations lack detail on the County's official customs, policies, and practices, or with respect to the identities of the responsible decisionmakers, that is to be expected. Ms. Young has not yet obtained discovery from the County. During discovery, Ms. Young will be able to inquire about the County's policies, the decisionmakers, and the events that led to the County's actions against her. For now, Ms. Young has plausibly alleged that the County maintained unconstitutional customs, policies, and practices that deprived her of rights guaranteed by the Fourteenth Amendment. And at this stage, Ms. Young is entitled to the reasonable inferences that the County officials who made the discriminatory and retaliatory decisions had final authority to take such actions, that the County was aware of such actions, and that the County

---

[3] Because of the factual and legal similarities between Ms. Young's claims in Counts I, II, III, IV, V, VI, VII, and VIII, the parties will take the same discovery whether or not Count III is dismissed. Allowing Ms. Young's Monell claim to proceed will allow the Court (or a factfinder) to determine whether Ms. Young can prevail on the claim once the parties have fully explored the facts of the case.

participated in and condoned those actions. See Morgan v. City of Rockville, No. PWG-13-1394, 2013 WL 6898494, at *6 (D. Md. Dec. 30, 2013) (holding, in the context of a motion to dismiss, that a plaintiff was entitled to reasonable inferences that members of a municipality had final authority to establish policy, that the municipality was aware of the policy decisions, and that the municipality officially sanctioned the policies). Ms. Young's Complaint is detailed enough to "raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, and to put the County on notice of Ms. Young's claims against it and the factual basis for those claims, Jackson, 15 F.3d at 340. Accordingly, the County's Motion will be denied as to Count III.

### IV. CONCLUSION

For the foregoing reasons, the County's Motion to Dismiss (ECF No. 19) is **GRANTED IN PART** and **DENIED IN PART**. The Motion is granted with respect to Ms. Young's claims against the County in Counts IX and X, which are dismissed without prejudice. Counts IX and X remain pending against Ms. Jackson. The Motion is denied as to Count III. A separate order will be issued.


January 31, 2023                                    /s/
Date                                                Beth P. Gesner
                                                    Chief United States Magistrate Judge